UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA,                    :
                                             :
                    **Plaintiff**   :
                                             :          09 CR 625 (HB)
    - against -                            :
                                             :          OPINION &
                                             :          ORDER
LUIS HERNANDEZ, RAFAEL CASTILLO,             :
JANIRA BUENO, LUIS EDUARDO PEGUERO,          :
MELVIN LOPEZ HERNANDEZ,                      :
RAYAN ISMAEL LOPEZ, WENDY JIMENEZ,           :
HENRY ROSA, VIVIANA CASTILLO,                :
CLEOPATRA RODRIGUEZ,                         :
                                             :
                    **Defendants**  :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

        The ten defendants in this action have been indicted on charges of conspiracy to defraud the Unites States with Respect to Claims, 18 U.S.C. § 286, conspiracy to commit mail fraud and wire fraud, 18 U.S.C. § 1349, conspiracy to commit fraud in connection with identification documents, 18 U.S.C. § 1028(a)(7) and (f), and aggravated identity theft, 18 U.S.C. § 1028A(a)(1) & (2). Before me are a variety of pretrial motions. In sum, the defendants respectively move for the following: (1) suppression of statements made to government agents (Defendants Wendy Jimenez and Cleopatra Rodriguez); (2) severance due to potential *Bruton* violations at trial (Jimenez, Viviana Castillo, and Rafael Castillo); (3) severance due to conflict between the right to testify and spousal privileges (Janira Bueno); (4) an order for a bill of particulars (Bueno and Rodriguez); (5) early disclosure of "bad act/criminal conduct" evidence pursuant to Rule 404(b) of the Federal Rules of Evidence (Jimenez and Rodriguez); (6) disclosure of evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972) (Rodriguez); (7) suppression of evidence obtained as a result of an constitutionally invalid search warrant (Rafael Castillo); and (8) dismissal of the indictment with respect to Luis Hernandez. Since each of these motions involves different defendants and

1

discrete factual settings, they will be resolved *in seriatim*. The rulings are applicable to all other defendants where the resolution of the motion impacts other defendants.

## DISCUSSION

(1) <u>Suppression of Statements Made to Government Agents (Jimenez and Rodriguez)</u>

Defendants Wendy Jimenez ("Jimenez") and Cleopatra Rodriguez ("Rodriguez") both move to suppress statements made to government agents. Jimenez seeks to suppress statements she made after being placed under arrest because she is a diabetic and on psychiatric medication, and therefore was unable to give a valid waiver of her *Miranda* rights. Rodriguez seeks to suppress statements she made on two occasions to government agents based on the claim that the statements were involuntary due to her limited English proficiency.

**Jimenez**

Jimenez was arrested upon arrival at John F. Kennedy Airport in Queens, New York on July 8, 2009. Jimenez states that she has diabetes and is also on medication for severe depression. Declaration of Wendy Jimenez ("Jimenez Decl.") ¶¶ 4, 11. She claims that upon her arrest she became dizzy, and was permitted to take an insulin shot before getting into the arresting agent's vehicle. *Id.* ¶ 4. On the drive from the airport, she states that she was questioned by the officers, but she was still dizzy and had a severe headache and did not answer. *Id.* ¶ 6. After sleeping overnight, she was taken to the hospital "because [her] health deteriorated rapidly." *Id.* ¶ 8. After returning from the hospital, she was questioned again; during this second round she remained dizzy, still had a headache, and claims to have not eaten that day. *Id.* ¶¶ 9-10. She claims that she "was not in a position to make a statement at that time or to waive my right to remain silent." *Id.* The government supplements and contradicts some of Jimenez's claims. En route from the airport, according to the government, she was not questioned but advised of her constitutional rights, whereupon she indicated a headache and sought to talk the next day. Gov't's Br. at Ex. A (Report by FBI Special Agent, name redacted). She was provided dinner that night, but declined to eat it, and was permitted to take her insulin shot and blood sugar reading. *Id.* She was transported to the hospital the next day, received a "fit for confinement" letter after being examined by a physician, and discharged. Gov't's Br. at Ex. B (New York Downtown Hospital Discharge Instructions). After being transported to the FBI

headquarters in Manhattan, she was again advised of her rights and then signed an "Advice of Rights form," which essentially stated that she would waive her right to an attorney and to remain silent and instead answer the agents' questions. Gov't's Br. at Ex. C (Advice of Rights Form).. She thereafter gave an "extensive post-arrest statement." Gov't's Br. at 4, Ex. D (Summary of post-arrest statements).

A District Court may hold an evidentiary hearing to determine whether a defendant's statement was voluntarily made. *See Jackson v. Denno*, 378 U.S. 368, 392 (1964). A material factual dispute regarding whether a statement was voluntary triggers the need for a hearing. "It is incumbent upon the defendant to set forth the specific factual basis to support [her] claim that [her] *Miranda* waiver…[was] involuntary so as to warrant an evidentiary hearing." *United State v. Amery*, No. 02 Cr 143, 2002 WL 31027514, at *1 (S.D.N.Y. Sept. 10, 2002). A "bald assertion that a statement was involuntary" is insufficient; specification of the facts for such a characterization is needed. *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998). "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable to the court to conclude that contested issues of fact…are in question." *United States v. Jass*, 331 Fed.Appx. 850, 854 (2d Cir. 2009) (quoting *Untied States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005). Here, Jimenez raises sufficiently detailed and specific factual claims to raise "contested issues of fact" regarding the statements she made after the waiver of her *Miranda* rights. Specifically, as described above, Jimenez raises questions as to her health and mental condition at the time she of her statements, placing both the voluntariness and "knowing" nature of her waiver into doubt. Her affidavit is not a general assertion that her statement was involuntary, but rather points to specific facts related to her medical and mental condition at the time she made the statements. As a result, I find that an evidentiary hearing is necessary to resolve this issue, and will make a determination on whether to suppress Jimenez's statements after that hearing. The hearing shall be held on Monday, January 11, 2010 at 10:30 A.M. in Courtroom 23B.

**Rodriguez**

Rodriguez was not formally arrested at the time she made either of her two statements. She was first question by government agents at her home on or about April 25, 2008. Rodriguez concedes that she was informed that she was not under arrest. Affidavit of Cleopatra Rodriguez

("Rodriguez Aff.") ¶ 3a. After informing the agents that she did not speak English, she was told "that a Spanish speaking agent could be made available to translate for me during questioning," and was asked if she would accompany the agents to the Offices of the New York Department of Taxation and Finance. *Id.* Rodriguez states that after arriving at the office, she was questioned "over an extended period of time in the presence of numerous agents" and that she was at no time informed of her *Miranda* rights. *Id.* ¶ 3b. On or about July 25, 2008, Rodriguez was again questioned. She was brought to the FBI office at Federal Plaza, and "interrogated by a number of agents for a second time," and was "informed that the agents believed I had been involved in illegal conduct." *Id.* ¶ 3c. She again claims she was not informed of her *Miranda* rights. The government does not dispute any of Rodriguez' factual claims about her statements, and relates the same essential story. *See* Gov't's Br. at 1-2. Unlike Jimenez, Rodriguez does not raise a material factual dispute that needs to be resolved pursuant to an evidentiary hearing. *See Mathurin*, 148 F.3d at 69. To the contrary, since there is no disagreement between the defendant or the government as to the essential facts surrounding her statements, the voluntariness of these statements can be resolved on the papers.

Rodriguez argues that her statements were made involuntarily and without first being instructed on her right to remain silent and to request an attorney, pursuant to *Miranda v. Arizona*, 384 U.S. 386 (1966). A defendant is entitled to *Miranda* warnings only if she is questioned while "in custody." *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998). "A person is in custody for purposes of *Miranda* if a reasonable person in the suspect's shoes would not have felt free to leave under the circumstances." *United States v. Badmus*, 325 F.3d 133, 138 (2d Cir. 2003) (quoting *United States v. Ali,* 86 F.3d 275, 276 (2d Cir.1996)). The undisputed facts asserted by Rodriguez demonstrate that she was not in custody at the time of either period of questioning. She was told on both occasions she was not under arrest, and was asked, as opposed to told, to come to the government offices. *See United States v. Mussaleen*, 35 F.3d 692, 697 (2d Cir. 1994) (defendant who was visited at home and asked to accompany agents to police station was not in custody). As in *Mussaleen*, Rodriguez "fails to specify conduct by the detectives amounting to the kind of coercive pressure that would cause a reasonable person to feel that he had no choice but to submit." *Id.* The fact that she was interviewed at an enforcement agency's office and that the agents told her they believed she was

involved in illegal conduct are not inherently indicative of custody without some indication that she believed she was unable to leave. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("Nor is the [*Miranda*] requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.").

If a defendant is not in custody when her statements are made, the only question that remains is whether the statements were made "voluntarily" and not due to coercion. *See United States v. Orlandez-Gamboa*, 320 F.3d 328, 332 (2d Cir. 2003). "No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." *Id.* (internal citations and quotations omitted). In determining the voluntariness of a defendant's statement, a court should consider "(1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Green v. Scully,* 850 F.2d 894, 901 (2d Cir.1988). Rodriguez' contention that her statements were involuntarily made is unpersuasive. The sole facts that she marshals to support her claim of coercion is that she had limited English-speaking skills, was asked to come to the agents' offices, and was interviewed before "numerous" agents. But upon learning that she was primarily a Spanish-speaker, she was put in touch with a Spanish-speaking agent who explained that she was not under arrest. Also, as noted above, she was asked, not required, to come to the offices. Rodriguez raises no further facts to indicate that she was coerced to give statements against her will. As such, I find that her statements were given voluntarily and the motion to suppress is denied.

(2) <u>Severance Due to Potential Violation of *Bruton v. United States* (Jimenez, V. Castillo, and R. Castillo)</u>

Three defendants, Jimenez, Viviana Castillo ("V. Castillo"), and Rafael Castillo ("R. Castillo") each seek severance and separate trials on the grounds that statements by certain co-defendants may implicate them in violation of *Bruton v. United States*, 391 U.S. 123 (1968). Pursuant to *Bruton*, the admission of a co-defendant's confession at joint trial that implicates another defendant in that trial is a violation of the implicated defendant's right to cross-examination under the Confrontation Clause of the Sixth Amendment. Jimenez claims that three co-defendants made statements to law enforcement agents that implicate her in the charged

indictment; V. Castillo similarly claims that two co-defendants made statements to law enforcement agents that implicate her; and R. Castillo joins in the request for the same relief and offers no different rationale for severance. The government argues that severance is unnecessary, because it will sufficiently redact the statements so as to comply with *Bruton*. At a hearing before this court on the various motions, counsel for Jimenez indicated that redaction was an acceptable solution for his client with regards to two co-defendants, Janira Bueno and Rodriguez, but statements by a third, Henry Rosa, could not be sufficiently redacted. Hr'g Tr. at 11:13-20 (Dec. 17, 2009). I asked the government to provide Mr. Rosa's statement with proposed redactions to further explore the issue. *Id.* at 13:3-4.

"[W]here the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are admitted at a joint trial, courts cannot accept limiting instructions as an adequate substitute for the defendant's constitutional right of cross-examination." *United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009) (quoting *Bruton*, 391 U.S. at 135-37). However, "a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights." *Id.* at 56 (quoting *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989)). A court should perform a two step-analysis of proposed redacted statements: (1) examine whether the statement "indicate[s] to the jury that original statement contained actual names" and (2) "whether the statement, even if the very first item introduced at trial would immediately inculpate the defendant in the charged crime." *Jass*, 569 F.3d at 61 (internal citations and quotations omitted).

A review of the government's proposed redactions, with some small modifications that I have made available to the Assistant United States Attorney and defense counsel, are at this time sufficient to overcome any potential *Bruton* violations with regard to Jimenez and, as a result, severance is unnecessary. The redactions are not blank spaces or so awkward as to indicate that the original statement contained actual names; indeed the use of phrases like "another person" is more likely to indicate that Rosa was simply unwilling to specifically identify certain individuals to law enforcement. Second, the statements are sufficiently redacted with neutral pronouns or the phrase "another person" such that Jimenez would not be "immediately" inculpated. Given

the fact that there are four other women indicted and presently scheduled to stand trial, the use of "she" in the redactions does not raise *Bruton* concerns. However, the government is instructed to consider gender-neutral redactions (such as "they") should some of the female defendants other than Jimenez plead guilty, so that the jury could easily conclude that the only "she" Rosa could be talking about is Jimenez. While this redaction practice is likely sufficient to protect the confrontation rights of V. Castillo and R. Castillo as well, the government is directed to provide further prepared redactions, if any, no later than one week prior to trial, whereupon I will likewise determine whether the statements may be submitted, need further revision, etc.

(3) <u>Severance Due to Potential Conflict Between Right to Testify and Marital Privileges (Bueno)</u>

Defendant Janira Bueno ("Bueno") initially sought severance and a separate trial based on an alleged conflict between her right to testify on her own behalf, and her right not to testify against her spouse, Rafael Castillo.[1] By letter to this Court on December 22, 2009, Bueno through her counsel withdrew her motion to sever. As such, I need not consider it.

(4) <u>Order for Bill of Particulars (Bueno and Rodriguez)</u>

Defendants Bueno and Rodriguez both seek orders directing the government to provide a bill of particulars. "A bill of particulars may be [ordered] pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure 'in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *United States v. Israelov*, No. 08 Cr. 1327 (HB), 2009 WL 3642867, at *4 (S.D.N.Y. Nov. 4, 2009) (quoting *United States v. Bortnovsky,* 820 F .2d 572, 574 (2d Cir.1987)). Whether to grant a bill of particulars is within the sound discretion of the court. *See United States v. Payden,* 613 F.Supp. 800, 816 (S.D.N.Y.1985). The bill is not intended to be an investigatory tool and should only be required "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres,* 901 F.2d 205, 234 (2d Cir. 1990).

---

[1] Whether or not Castillo and Bueno are in fact married has not been determined by this Court, and need not do so in light of Bueno's withdrawal of her motion.

As I tentatively indicated at the hearing on December 17, a bill of particulars is not warranted for these two defendants. Although this case involves a complicated criminal scheme that occurred over the period of a number of years, the government has provided an indictment that more than sufficiently details the major factual elements of the case. It provides details as to the alleged role of both Bueno and Rodriguez in the broader criminal activity; for example the indictment indicates that Rodriguez allegedly rented an apartment and that Bueno leased an office as part of the mail and wire fraud conspiracy. Indictment at ¶ 18 e. and f. *See United States v. Ferrarini,* 9 F.Supp.2d 284, 299 (S.D.N.Y.1998) (indictment "discloses sufficient information to inform the defendants adequately of the charges against them" because "[i]t describes in careful detail the nature and goals of the charged conspiracy, the overt acts taken in furtherance of it, and the numerous additional substantive counts with which the defendants are charged."). The government has indicated that it has provided significant discovery, and defendant has not disputed this notion. *See United States v. Reinhold,* 994 F.Supp. 194, 201 (S.D.N.Y.1998) (no need for bill of particulars where defendant "had extensive discovery" because there is no danger that "defendant[ ] will be unfairly surprised at trial"). Based on the forgoing, neither Bueno nor Rodriguez will be "unfairly surprised at trial as a consequence of the denial of the bill of particulars," *Torres,* 901 F.2d at 234, and therefore their motions are denied. However, given the complexity of the case and the need to fairly apprise the defendants of the crimes for which they are charged, the Government is reminded, per its representations at the hearing, that hard copy-only discovery materials will be, by on or about January 12, 2010, relocated from Windsor, New York to 290 Broadway in Manhattan, and that the Assistant United States Attorney will be available to assist any counsel who seeks help in navigating either the hard copy or electronic discovery that has been provided. Hr'g Tr. at 15-16; 21-22.

(5) <u>Disclosure of Evidence Pursuant to Rule 404(b) (Jimenez and Rodriguez);</u>

Defendants Jimenez and Rodriguez seek disclosure of "bad acts" evidence in such "sufficient and reasonable time" as needed to move to preclude the introduction of such evidence. Jimenez Mem. of Law in Supp. at 1; Nelson Decl. at 6. Rule 404(b) of the Federal Rules of Evidence states that the Government must provide "evidence of other crimes, wrongs or acts…[with] reasonable notice in advance of trial." Fed.R.Evid. 404(b). "Courts in this Circuit

have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)." *United States v. Ojeikere*, 299 F.Supp.2d 254, 257 (collecting cases). The Assistant United States Attorney has represented that he will provide this material in either two weeks, *see* Gov't's Br. at 28 ("on or before February 9, 2010"), or ten days prior to trial, Hr'g. Tr. at 23:9. While two weeks would be preferable and is strongly encouraged, ten days is sufficient to provide both defendants with reasonable notice.

(6) <u>Disclosure of Evidence Pursuant to *Brady v. Maryland* and *Giglio v. United States* (Rodriguez)</u>

Rodriguez also moves to require that "the government furnish or permit discovery, inspection and the right to copy" certain evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972). Nelson Declaration in Support and Mem. of Law ("Nelson Decl.") ¶ 25. The *Brady* line of cases obliges the government to disclose evidence favorable to the accused when it is material to guilt or punishment; it includes not just exculpatory items, but impeachment material as well. *See United States v. Coppa*, 267 F.3d 132, 135 (citing *Brady* and *Giglio*). The critical touchstone for whether certain evidence must be turned over under *Brady* is whether the items, "if suppressed would deprive the defendant of a fair trial." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 675 (1985)). The timing of disclosure required by *Brady* is somewhat amorphously defined as "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." *Id.* at 142. As such, a prosecutor must necessarily make predictions as to the relative impact nondisclosure of certain material prior to trial might be viewed post-trial. *Id.*

"Courts in the Second Circuit have repeatedly denied [requests for immediate disclosure of *Brady* material] where…the Government has made a good-faith representation to the Court and to defense counsel that it recognizes and has complied with its disclosure obligations under *Brady*." *United States v. Davis*, No. 06 Cr. 911(LBS), 2009 WL 637164, at *13 (S.D.N.Y. Mar. 11, 2009). Here, the Assistant United States Attorney has represented in open court that it recognized and was complying with his *Brady* obligations. Hr'g. Tr. at 23:22. The Court encourages the prosecutor, as he is bound to do, to continue to review evidence to ensure that he is following the *Brady* guidelines. Rodriguez provides four specific categories of evidence that

9

she seeks under *Brady*, such as inconsistent statements made by certain parties. These materials are *Giglio*-type material, as they center on impeachment. Although this Court cannot order the immediate disclosure of these items, *see Coppa*, 267 F.3d at 144, it instructs the Government to review these categories in preparing its *Brady* and *Giglio* disclosures, and to be mindful of its duty to disclose impeachment material in time for effective use at trial. The Assistant United States Attorney stated that it will provide both *Giglio* and other Jencks Act "3500 Material" shortly before trial. The Second Circuit has encouraged such pretrial disclosures in complex cases, and the Court finds that disclosure of *Giglio* and 3500 material shortly before trial is reasonable.[2] *See Davis*, 2009 WL 637164 at *14.

(7) <u>Suppression of Evidence Obtained via a Search Warrant (R. Castillo)</u>

Defendant Rafael Castillo ("Castillo") moves to suppress evidence seized as the result of a search pursuant to a warrant at two locations in close proximity in Pennsylvania. On or about February 27, 2008, federal agents obtained and executed warrants to search 800 Cove Court (the "Cove Court Residence") and 434 Clearfield Street, "first floor office of A&L Income Tax and J&J Income Tax Service" (the "Clearfield Street Office") in Freemansburg, Pennsylvania.[3] *See* Mem. of Law. in Supp. of Def. Rafael Castillo's Pretrial Motions ("Castillo Br.") at Ex. A (Search Warrants for 800 Cove Court and 434 Clearfield Street). The search warrants are essentially identical except for the location listed and the description of that location, incorporated and attached to each warrant as "Attachment A." *Id.* Both warrants describe the property to be searched for and seized as "Evidence of crimes; contraband, fruits of crimes, or other items illegally possessed; or property designed for use, intended for use, or used in committing violations of [18 U.S.C. §§ 187 (false/fictitious/fraudulent claims against the United States), 1028 (identification document fraud), 1341 (mail fraud), 1342 (use of fictitious names in

---

[2] It is worth noting that *Giglio* material, which covers impeachment-based material that triggers the concerns raised by *Brady*, differs from Jencks Act, or "3500" material, which covers all statements made to the government. In some tension with *Brady* and *Giglio*'s requirement to disclose evidence needed for a fair trial in time for "effective use," the Jencks Act prohibits the required disclosure of statements in the possession of the government before the witness testifies on direct. *See* 18 U.S.C. § 3500. To the extent that 3500 material and *Giglio* material overlap, the dictates of the constitutional pronouncements of *Brady* and *Giglio* control. *See Coppa*, 267 F.3d at 145-46 ("It is, of course, a fundamental axiom of American law…that the requirements of the Constitution prevail over a statute in the event of a conflict.").
[3] A third search warrant was issued for 1210 Livingston Street in Freemansburg, Pennsylvania. That warrant is not challenged by any defendant.

schemes via U.S. mail), 1344 (bank fraud), conspiracy to do the same, and 26 U.S.C. § 7206 (tax-related fraud and false statements), and conspiracy to do the same]." *Id.* Both warrants also incorporated and attached an identical "Attachment B" to the description of the property to be seized; "Attachment B" is a list of sixteen categories of documents that was prepared in conjunction with the application for the search warrant.

Castillo claims that both of these search warrants and the resultant searches of the two locations are constitutionally infirm because the warrants are overbroad and lack sufficient particularity. Although somewhat similar in focus, these are two distinct legal issues: (1) whether the items listed as "to be seized" in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers. *See United States v. Dinero Express, Inc.*, No. 99 Cr. 975, 2000 WL 254012, at *8-9 (S.D.N.Y. Mar. 6, 2000) (separately analyzing particularity and overbreadth); *United States v. Cohan*, 628 F. Supp. 2d 355, 359 ("A warrant…can be unconstitutionally infirm in two conceptually distinct but related ways: either by seeking specific material as to which no probable cause exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries."). Castillo does not seek an evidentiary hearing to resolve any factual disputes on this topic, and there are sufficient uncontested material facts in the papers to permit me to decide without a hearing. *See United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005); *United States v. Rivera*, No. (09-0294-cr), 2009 WL 3806416, at *2 (2d Cir. Nov. 16, 2009) ("[A]s the parties agreed to all the facts, we can not find that the district court abused its discretion in failing to hold a hearing.").[4]

**Overbreadth of Warrant**

---

[4] In his brief, Castillo does raise a question as to one particular material fact. Castillo suggests that the attachments may not have been actually attached to the executed search warrants. *See* Castillo Br. at 8 ("It remains unclear whether the agents even had Attachments A and B for the Warrants."). However, he does not support this speculation with any factual affidavit, nor does he request an evidentiary hearing for this claim. The Government has supplied the affidavit of Timothy J. Ryan, Special Agent of the Internal Revenue Service, who participated in the preparation and execution of both search warrants, and affirms that he and at least one other officer possessed copies of the warrants with attachments during the search. Aff. of Timothy J. Ryan, ¶¶ 5-10. As such, Castillo's speculation is insufficient to create a factual dispute, while Agent Ryan's affidavit provides sufficient factual support to conclude that Attachments A and B were physically attached to the warrants when they were executed. *See Watson*, 404 F.3d at 167 (2d Cir. 2005) (upholding District Court determination that no hearing was needed where factual dispute was raised without any claim of personal knowledge); *United States v. Barrios*, 210 F.3d 255, 2000 WL 419940, at *1 (2d Cir. 2000) ("speculative and conclusory assertions on the central factual question" insufficient to trigger need for evidentiary hearing).

The first question is whether the magistrate judge authorized search warrants that were constitutionally overbroad because they provided for the seizure of specific items for which there is no probable cause. In other words, "the issue is whether there exists probable cause to support the breadth of the search that was authorized." *Dinero Express*, 2000 WL 254012, at *9. The determination of whether there was probable cause sufficient to support the breadth of the warrants is based on a totality-of-the-circumstances analysis. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983). A finding of probable cause requires a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*; *see also United States v. Garcia*, No. 04 Cr. 603 (HB), 2005 WL 589627, at *5 (S.D.N.Y. Mar. 14, 2005). The magistrate's determination that probable cause exists is entitled to "great deference," and the task of the reviewing court "is simply to ensure the magistrate had a substantial basis" for that determination. *Gates*, 462 U.S. at 239 (internal quotations and ellipses omitted). "Doubts should be resolved in favor of upholding the warrant." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)).

A review of the affidavit supporting the application for the warrants indicates that the magistrate judge had a "substantial basis" to determine that scope of both search warrants was appropriate and supported by probable cause. There is little question that the categories of documents listed in Attachment B for each warrant – including categories such as "client files" and "forms W-2 and 1099" – are fairly broad. However, the affidavit in support of the search warrant application provides the necessary basis for a determination of probable cause to seize items in each of these categories. The affidavit, drafted by Special Agent Anthony Ventre of the IRS Criminal Investigation Division, describes a large-scale tax fraud operation that involved numerous actors, "the filing of tens of thousands of federal and state tax returns and millions of dollars of fraudulently obtained tax refunds." Affidavit of Anthony Ventre ("Ventre Aff."), ¶ 5, Castillo Br. at Ex. A. It explains how Special Agents traced electronic filings of fraudulent documents back to both of the locations for which warrants were issued. It further describes how a variety of actors allegedly involved in the preparation of fraudulent tax documents had connections to both locations. For example, two Electronic Filing Identification Number

("EFIN")[5] connected to the filing of fraudulent returns in this scheme were traced back to a "Samuel Rodriguez of Baby J Income Tax Service and located at the [Clearfield Street Office]." *Id.* ¶ 14. In another instance, a different EFIN, of which 129 federal and at least 12 state tax returns were confirmed as fraudulent, was connected to a "Juan Ramon Mendez Gonzalez" who had an outstanding warrant issued from this District, and had a driver's license in another name that listed his address as the Cove Court Residence. *Id.* ¶¶ 9, 19. The affidavit explains how the operation necessarily required numerous documents – identification materials, tax filing forms, refund checks – to accomplish the scheme. In conjunction with this complex scheme, the affidavit describes the materials typically kept by individuals who prepare and file tax returns, and sets out the categories of documents which became "Attachment B" to both warrants. As the Assistant United States Attorney points out in his brief opposing Castillo's motion to suppress, each of these categories are reasonably related to the alleged criminal activity and their seizure justified by the affidavit. *See* Gov't's Br. at 42-48 (describing probable cause for each category of documents in Attachment B).

An additional concern raised by Castillo is that the warrants and incorporated attachments do not specify a time period for any of the documents, "and therefore, exceed the relevant time periods discussed in the Ventre Affidavit." Castillo Br. at 11. A failure to indicate a time frame could render a warrant constitutionally overbroad because it could "allow[] the seizure of records dating back arbitrarily far" and untethered to the scope of the affidavit which ostensibly provided probable cause. *See United States v. Cohan*, 628 F. Supp. 2d 355, 365 (E.D.N.Y. 2009). The Second Circuit has yet to consider the effect the lack of a time frame has on a search warrant's breadth or its particularity, and district courts within this circuit are split on the issue; the split in decisions is due primarily to the different fact patterns involved. *Id.* (collecting cases and also indicating disagreement amongst other circuits as well). At least so far as this case is concerned, the lack of a specific time frame does not render the warrant overbroad. Agent Ventre's affidavit in support of the search warrants indicates that federal law requires "a tax preparer to retain for three years a copy or list of income tax returns or claims for refunds that were prepared" and thereafter indicated the other sorts of records related to tax returns that preparers typically keep and which became the categories in Attachment B. *See* Ventre Aff. ¶ 20. In addition, the

---

[5] An EFIN is the number assigned to commercial preparers of tax returns so that they may file returns electronically with the IRS.

affidavit indicates that the investigation had been ongoing since at least 2007, and that the Clearfield Office location was leased beginning in 2007.  As such, the magistrate judge may have concluded that the list of items in Attachment B were by their very nature limited to the past few years.  Further, the fact that Castillo fails to point to a single document that was seized and was outside the relevant time frame of the alleged criminal activities assuages any concerns I may have had and indicates that the search authorized by the magistrate was not constitutionally overbroad.  Unlike in more straightforward, "single-act" criminal cases, a time frame is less relevant to a warrant's breadth where the criminal acts are complex and necessarily extend over a significant period of time.  *See United States v. Blumberg*, No. 3:97-cr-119 (EBB), 1998 WL 136174, at *7 (D.Conn. Mar. 11, 1998) (based on complex and indeterminate duration of scheme, "it would be unreasonable to expect the government to delimit the search by a specific time period.").  Given the complex nature of the criminal scheme and the number of years in which it was ongoing, a lack of a specific time frame in the search warrants is not sufficient in of itself to render the warrants constitutionally overbroad.  *See United States v. Gotti*, 42 F. Supp. 2d 252, 274 (S.D.N.Y. 1999) (lack of time limitation did not render warrant defective).

**Particularity**

The second issue raised by Castillo is whether the search warrants described the items to be seized with sufficient particularity.  The Fourth Amendment to the Constitution states in part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV.  The particularity requirement prohibits general search warrants and requires a sufficient description of the evidence to be seized.  "In order to prevent a wide-ranging exploratory search…the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992).  The requirement seeks to cabin any discretion on the part of the executing agents, though "Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances." *See United States v. Buck*, 813 F.2d 588, 590 (2d Cir. 1987) (quoting *United States v. Young*, 745 F.2d 733, 759 (2d Cir. 1984)).  An affidavit in support of a search warrant may not be considered in the particularity analysis where, as here, it was not incorporated and

attached. *George*, 975 F.2d at 76. The other documents which were incorporated and attached to both search warrants– Attachments A and B – may be considered. *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004). Since Castillo intermingles particularity and overbreadth in his motion, he raises the same concerns about the search warrants' particularity: that the categories are unconstitutionally broad and lack a time frame.

The search warrant for the Cove Street Residence is sufficiently particularized in terms of the types of documents to be seized. The search warrant itself indicates that only documents related to violations of various criminal fraud statutes related to identity, mail, and tax fraud. The categories of documents incorporated by reference in Attachment B are all tax or business accounting related sorts of items, and did not provide a list so vague as to allow government agents to rummage through all of the various personal and private items in a personal residence. The delineated documents encompass "neither diary nor love letter…[n]or is there any claim in this case that the agents read diaries or love letters in the search that discovered" the documents to be seized. *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990). Indeed, as with overbreadth, Castillo fails to point to any items collected due to the alleged lack of particularity that should have been excluded by a more detailed warrant. Unlike a search warrant that allows "general, exploratory rummaging," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), or one that only contains "general boilerplate terms, without either explicit or implicit limitation on the scope of the search," *United States v. Buck*, 813 F.2d 588, 591 (2d Cir. 1987), the warrant for the Cove Street Residence directed and limited executing agents to particular types of tax-related business documents. While some of the categories are somewhat vague, given the complexity of a scheme and the numerous documents involved, the lists of items are described "with as much particularity as circumstances reasonably allow." *George*, 975 F.2d at 76. Nor were the categories of documents listed so vague as to be unhelpful to the agents; they all clearly related to tax documents and associated business records. "Although the warrant[] authorized the seizure of a large number of documents, it contained a clear and easily understood listing of the types of documents to be seized as evidence of criminal activity." *Dinero Express, Inc.*, 2000 WL 254012, at *8. In sum, the documents specified in Attachment B as incorporated by the search warrant of the Cove Street Residence was sufficiently particular to allow government agents to perform a discrete search for relevant evidence.

The scope of the warrant for the Clearfield Office location is more problematic. The business at that premises was ostensibly to prepare tax returns. As such, the categories of items listed in Attachment B – particularly absent a time frame – could have encompassed most all of the business records on the premises. However, the nature of the location and related alleged criminal activity as described by the affidavit indicates that the "all records" exception is applicable to this search. *See Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1026-27 (2d Cir. 1980). "When the criminal activity pervades that entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements." *United States Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir. 1989); *see also United States v. Sugar*, 606 F. Supp. 1134 (S.D.N.Y. 1985). The affidavit describes a number of facts that indicate the business at the Clearfield Office location was thoroughly permeated with criminal activity: there was little activity for several months after signing the lease; the office was not used during normal business hours but typically only at night; three different business names related to the preparation of tax returns were associated with the office despite being only one business; maintenance staff never saw customers going in or out of the office; EFINs registered to different locations and individuals were nevertheless traced back to the location; and high rates of fraudulent returns were filed from EFINs associated with the location. "[I]t is not necessary that the affidavit…set forth specific factual evidence demonstrating that *every part of* the enterprise in question is engaged in fraud…[r]ather, the affidavit need contain only sufficient factual evidence of fraudulent activity from which a magistrate could infer that those activities are just the tip of the iceberg." *United States v. Burke*, 718 F. Supp. 1130, 1140 (S.D.N.Y. 1989) (but refusing to apply exception because of two discrete businesses, only one of which permeated by fraud). Based on the information provided by the affidavit, at the Clearfield Street Office, "criminal activity permeates much of the business," *Dinero Express, Inc.* 2000 WL 254012 at *10, and there was little that could be done to further cabin the scope of the search at that location, *C.E.C. Servs.*, 869 F.2d at 187 (noting that it would be "virtually impossible to segregate documents" where most of the business was likely involved in criminal activities). "The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a

crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *Andresen v. Maryland*, 427 U.S. 463, 482 (1976).

Whether the time period was sufficiently particularized applies with equal force to the warrants for both locations.[6] As noted above, the Second Circuit has not yet addressed the impact of the absence of a time frame to the particularity of a search warrant. *See Cohan*, 628 F. Supp. 2d at 365-66. Many of the reasons why the lack of a time frame does not in this case render the warrants constitutionally overbroad applies with similar force to the particularity analysis. "A temporal limitation in a warrant is not an absolute necessity, but is only one idici[um] of particularity." *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 58 (D.Conn. 2002). The complexity and duration of the alleged criminal activities render a time frame less significant than in a case that required a search for a small set of discrete items related to one or only a few dates. *See Gotti*, 42 F. Supp. 2d at 274. In light of the scope of the scheme, the government sought to recover a large number of documents over a fairly broad time frame. Although an express time frame of "within the last three years" or something of a similar nature may have been ideal, the lack of a time frame in itself does not transform what is otherwise a relatively particularized document into an unconstitutional general warrant.

Castillo relies largely on two cases from other circuits, *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988) and *In re Grand Jury Proceedings,* 716 F.2d 493 (8th Cir. 1983) to support his claim that the search warrants were insufficiently particularized and constitutionally overbroad. Although the law relied upon in those two cases is essentially aligned with the law applied in this circuit, the facts of those cases are clearly distinguishable. In *Leary*, the crime for which the government sought evidence was a single transaction that violated the Arms Export Control Act, 846 F.2d at 594, whereas this case involves thousands of tax related transactions over the course of a number of years. The scope of items to be seized – "contracts, invoices, purchase orders" *id.* – are more general than the relatively tax-specific items listed in Attachment B to both search warrants at issue here. The court in *Leary* identified certain seized documents that clearly and obviously exceeded the scope of the single-transaction crime at issue, *id.* at 594-95, whereas again I must note that the defendant does not point to any evidence here which

---

[6] Although the time frame analysis is essentially the same for both locations, the fact that the "all records" exception applies to the Clearfield Street Office location is another factor that highlights why a specific time frame is not necessary to show sufficient particularity. *See Gotti*, 42 F. Supp. 2d at 274.

exceeded the scope of the criminal investigation.  Finally, *Leary* itself recognizes that "[e]ven a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and nature of the activity under investigation permit," and even cites to a Second Circuit case for the proposition that the particularity analysis can tolerate greater ambiguity in light of the facts of the particular case.  *Id.* at 600, 604.  The *In re Grand Jury* case highlights all the reasons why the search warrant for the Clearfield Street Office was problematic – it listed "broad statements of the types of records ordinarily kept by any [tax preparer]." 716 F.2d at 497.  However, unlike in *Grand Jury*, the all records exception is an appropriate remedy since the location appears permeated with criminal activity.  In addition, the warrant in *Grand Jury* was significantly broader, failing to even mention the offense for which evidence was sought or specify particular categories of documents to limit the agents' search.  *Id.* at 497, 499.

**Good Faith**

Even if I were to determine that the search warrants for either or both locations was constitutionally overbroad or insufficiently particular, I would have to conclude that the search is protected by the "good faith" exception.  *See United States v. Leon*, 468 U.S. 897 (1984); *Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984) (applying exception to particularity requirement).  Pursuant to *Leon*, the exception protects from suppression a search and seizure made in good faith reliance by government agents based on a search warrant in all but four situations: "(1) where the issuing [judge] has been knowingly misled; (2) where the issuing [judge] wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient…that reliance upon it is unreasonable." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (internal citations and quotations omitted); *Leon*, 468 at 923.  The first three are not raised as issues in this case by Castillo.  With regards to the fourth item, although the search warrant included fairly broad categories and lacked any express time frame limitation, it is by no means "so facially deficient" as to render reliance unreasonable.  Given the nature of a complex tax fraud case like this one, a government agent would likely expect to find fairly broad categories of tax-related documents to be seized.  In addition, the fact that the precise relevance of the absence of an express time frame on the particularity and breadth of warrant has yet to be

settled in this Circuit further supports the idea that agents reasonably relied on the magistrate's authorization and should be protected by the "good faith" exception. *See United States v. Buck*, 813 F.2d 588, 592-93. As a consequence of the reasoning spelled out above, this motion to suppress is denied.

## CONCLUSION

For the above-mentioned reasons, Wendy Jimenez shall be given an evidentiary hearing on her motion to suppress statements to be held on Monday, January 11, 2010 at 10:30 A.M., while Cleopatra Rodriguez's motion to suppress statements is DENIED. The motions by Jimenez, Viviana Castillo, and Rafael Castillo to sever due to potential *Bruton* violations are DENIED, and the Government is instructed to submit further proposed redactions, if any, one week prior to trial. Motions for a bill of particulars are DENIED. Evidence pursuant to Rule 404(b) shall be provided ten days to two weeks prior to trial, and per the representations of the Assistant United States Attorney, *Brady* material shall continue to be provided as it is discovered, and *Giglio*/Jencks material shall be provided in advance of trial. Finally, Rafael Castillo's motion to suppress evidence obtained pursuant to a search warrant is DENIED. The Clerk of the Court is instructed to close all motions related to this opinion.

**SO ORDERED**
January 6, 2010
New York, New York

_____
U.S.D.J.